IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-CV-1191-MSK-MJW

WAK INC., d/b/a Marrakech Café,

    Plaintiff,

*v.*

OHIO SECURITY INSURANCE CO.,

    Defendant.

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon the Defendant's Motion for Summary Judgment (**# 48**), the Plaintiff's Response (**# 52**), and the Defendant's Reply (**# 53**). For the reasons that follow, the motion is granted.

### I. JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1332.

### II. BACKGROUND[1]

This is a case in which the Plaintiff, Wak Inc. (Wak) seeks to recover insurance benefits for hail damage. Wak owns commercial property located in Denver, Colorado, which was insured under a casualty insurance policy (Policy) issued by Liberty Mutual Insurance and underwritten by Defendant Ohio Security Insurance Co. (Ohio) In May 2014, Wak's property was damaged in a hail storm. Wak submitted an insurance claim to Ohio, which determined that

---

[1] This is a summary of the undisputed facts. To the extent necessary and appropriate, the evidence presented is discussed more fully in the Court's analysis. All disputed facts are viewed in the light most favorable to Wak, the nonmoving party. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

the value of the claim was $734.92, below Wak's $1,000 deductible. As a result, Ohio issued a "partial denial" in July 2014 and did not pay the claim.

During July 2014, Wak personnel made numerous phone calls to Ohio in which they stated that Wak intended to hire its own engineer to inspect the property. Wak brought suit in May 2015, but voluntarily dismissed it without prejudice.

In September 2015, Wak invoked the appraisal provision of the Policy. Ohio requested a sworn proof of loss and provided the necessary forms. Wak submitted its proof of loss in the amount of $213,868.31 in November 2015. While the parties moved through the appraisal process, Ohio requested Wak refrain from commencing repairs so it could reinspect the property. The reinspection was delayed a few times due to weather and appraiser availability. Ultimately, the parties submitted their position statements to the umpire in July 2016, and a hearing was held in August 2016. In September, the umpire issued an appraisal award of $136,032.78 for replacement cost and $91,822.12 in actual cash value. Ohio promptly paid, and Wak accepted that sum.

Wak brought this suit in May 2016 before the Policy's statute of limitations expired, and the parties jointly moved to administratively close the case while they completed the appraisal process (# 19). Wak asserted three causes of action: (1) breach of contract based on denial/failure to pay its insurance claim, (2) breach of the implied covenant of good faith and fair dealing based on denial of the claim and forcing Wak to submit to the appraisal process, and (3) a violation of C.R.S. §§ 10-3-1115, 1116 based on unreasonable delay of the claim. The Court *sua sponte* raised concerns (# 38) as to its subject-matter jurisdiction because the action was filed before the appraisal was complete, and according to the Policy. It appeared that completion of the appraisal process was a condition precedent to Ohio's obligation to pay and thus to Wak's

2

breach-of-contract claim for failure to pay. After briefing on the subject, the Court issued an order addressing Wak's standing to sue and dismissing the breach-of-contract claim. The other two claims remain. Ohio now moves for summary judgment on both claims (**# 48**).

### III.  LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

# IV.  DISCUSSION

This action arises solely from the parties' disagreement as to the amount of Wak's loss. In viewing the parties' arguments, it is helpful to keep in mind two provisions of the Policy.

The first provision lists the insured's duties in the event of loss, which include the duty to submit a sworn proof of loss:

> Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.
> **(# 48-11 at 12**.)

It is undisputed that although the hail storm occurred in 2014.  Although Wak disagreed with Ohio's initial quantification of its loss, Wak did not submit its sworn proof of loss to Ohio until November 2015.

The second provision states that if the parties disagree as to the amount of loss, either can invoke an appraisal process:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.
>
> The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding. . . .
>
> If there is an appraisal, we will still retain our right to deny the claim.

(**# 48-11 at 12**.)  It is undisputed that Wak invoked this process in September 2015, and that it concluded with an issuance of an award in September 2016, which Ohio promptly paid.

## A.  Claim 1 — Common-Law Breach of the Covenant of Good Faith and Fair Dealing

Wak's first claim for relief is colloquially referred to an insurance "bad-faith" claim.

4

Wak contends that Ohio acted unreasonably "in denying the claim and closing its file in July 2014".[2] (**# 52 at 9**.) Ohio contends that Wak is unable to present sufficient evidence to make a *prima facie* showing as to this claim.[3]

In Colorado, every insurance policy has an implied duty of good faith and fair dealing. *See Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003). Breach of this duty gives rise to an action in tort to recover economic and noneconomic compensatory damages and punitive damages where appropriate. *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414–15 (Colo. 2004). To establish liability for bad-faith breach of the Policy, Wak must come forward with evidence that would establish that (1) a reasonable insurer under the circumstances would have paid or otherwise settled the insurance claim; (2) Ohio either knowingly or recklessly disregarded the claim's validity; and (3) Wak suffered a loss as a result of Ohio's conduct. *Id*. at 415.

In assessing a bad-faith claim, the reasonableness of an insurer's conduct is measured objectively based on industry standards. *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342, 343 (Colo. 2004). It is reasonable for an insurer to challenge insurance claims that are "fairly debatable." *See Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985); *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003); *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 556–57 (Colo. App. 1998) (affirming dismissal of insured's bad-

---

[2] Much argument is devoted to whether Wak's bad-faith claim is for Ohio's denial of the insurance claim or delay in paying it. For purposes of analyzing the sufficiency of Wak's proffer as to this claim, the distinction does not matter.

[3] Ohio also argues that because all material facts are undisputed, that the Court can determine whether Ohio's conduct was unreasonable as a matter of law. For this proposition, Ohio cites to *Zolman v. Pinnacol Assur.*, 261 P.3d 490, 497 (Colo. App. 2011), and *Baker v. Allied Property & Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1107 (D. Colo. 2013). These opinions do not stand for the proposition cited and are simply examples of its application in dissimilar contexts. Ultimately, the Court does not reach this issue because Wak has not come forward with sufficient evidence to create a triable issue.

faith claims because the insurance claims were fairly debatable); *Brandon v. Sterling Colo. Beef Co.*, 827 P.2d 559, 561 (Colo. App. 1991). Thus, an insurer will be found to have acted in bad faith only if it has intentionally denied, failed to process, or failed to pay an insurance claim without a reasonable basis. *Savio,* 706 P.2d at 1275; *Brandon,* 827 P.2d at 561.

### 1. *Reasonableness*

Although Wak's claim for relief is that Ohio acted unreasonably "in denying the claim and closing its file in July 2014", it is undisputed that Ohio issued a letter entitled "partial denial" in response to Wak's insurance claim for loss arising from the 2014 hail storm. In such letter Ohio did not deny because the loss was not subject to coverage. Instead, it determined that the amount of Wak's covered loss was only $734.92, less than the Wak's deductible of $1,000. Wak disputes the amount of loss determined by Ohio and proffers the 2016 appraisal award — $136,032.78 as replacement cost and $91,822.12 as actual cash value — as proof that Ohio's quantification of its loss in 2014 was unreasonable.

There is no doubt that the appraisal award is evidence of the amount of Wak's loss, but it is not sufficient to establish that Ohio's conduct in 2014 was unreasonable. The determination of the reasonableness of Ohio's actions in 2014 requires application of an objective standard — what a reasonable insurer would have done under the same or similar circumstances. Wak offers no evidence as to what insurance industry standards or practices were or how Ohio deviated from them. The evidence of record shows that Wak sent out an inspector who quantified the loss. In contrast, although Wak disagreed with the amount the inspector determined, and stated that it would get its own inspector, it did not do so for more than a year.

The parties disagree as to whether expert testimony is required to make a *prima facie* showing of bad-faith by an insurer. There does not appear to be any dispositive Colorado

faith claims because the insurance claims were fairly debatable); *Brandon v. Sterling Colo. Beef Co.*, 827 P.2d 559, 561 (Colo. App. 1991). Thus, an insurer will be found to have acted in bad faith only if it has intentionally denied, failed to process, or failed to pay an insurance claim without a reasonable basis. *Savio,* 706 P.2d at 1275; *Brandon,* 827 P.2d at 561.

### 1. *Reasonableness*

Although Wak's claim for relief is that Ohio acted unreasonably "in denying the claim and closing its file in July 2014", it is undisputed that Ohio issued a letter entitled "partial denial" in response to Wak's insurance claim for loss arising from the 2014 hail storm. In such letter Ohio did not deny because the loss was not subject to coverage. Instead, it determined that the amount of Wak's covered loss was only $734.92, less than the Wak's deductible of $1,000. Wak disputes the amount of loss determined by Ohio and proffers the 2016 appraisal award — $136,032.78 as replacement cost and $91,822.12 as actual cash value — as proof that Ohio's quantification of its loss in 2014 was unreasonable.

There is no doubt that the appraisal award is evidence of the amount of Wak's loss, but it is not sufficient to establish that Ohio's conduct in 2014 was unreasonable. The determination of the reasonableness of Ohio's actions in 2014 requires application of an objective standard — what a reasonable insurer would have done under the same or similar circumstances. Wak offers no evidence as to what insurance industry standards or practices were or how Ohio deviated from them. The evidence of record shows that Wak sent out an inspector who quantified the loss. In contrast, although Wak disagreed with the amount the inspector determined, and stated that it would get its own inspector, it did not do so for more than a year.

The parties disagree as to whether expert testimony is required to make a *prima facie* showing of bad-faith by an insurer. There does not appear to be any dispositive Colorado

authority on that issue,[4] but it is not necessary to resolve it in this context. There could be circumstances in which non-expert evidence is sufficient to make a *prima facie* showing — *e.g.*, where the insured presents an engineer's report and insurer refuses to pay the amount in the report and fails to explain why, or when a policy requires a response to the submission of an insurance claim within a time and the insurer fails to do so. Here, the problem is that Wak has simply not come forward with *any* evidence of the standard that should have governed Ohio's conduct in 2014.

Wak makes passing reference to its Rule 26 designation of Mr. Thomas Irmiter as an expert witness (**# 52 at 8**; **# 52-7**) suggesting that Mr. Irmiter would testify. But Mr. Irmiter was Wak's designated appraiser, and it does not appear that he is qualified to opine as to insurance industry standards or practices. According to Wak's disclosure, Mr. Irmiter has formulated only "the opinions, observations, findings and conclusions" as set forth in his report dated July 6, 2017. Such report has not been made part of the court record, so it is difficult to ascertain what the Mr. Irmiter's specific opinions are, but according to the disclosure, Mr. Irmiter's expertise is in "estimating, project management, forensic building inspections and the construction industry". Thus, it appears that Mr. Imiter has no expertise from which to opine as to insurance industry standards or practices.

Wak also generally refers to the Colorado Unfair Claims Settlement Practices Act, CRS § 10-3-1104(1), and Colorado Insurance Commission regulations as possible evidence of

---

[4] Ohio relies upon *Goodson*, 89 P.3d at 415. *Goodson* only notes in *dicta* that the "aid of expert witnesses is often required in order to establish objective evidence of industry standards."

Wak relies on *Dunn v. Am. Family Ins.*, 251 P.3d 1232, 1238 (Colo. App. 2010). The issue in *Dunn* was whether the insurer had a legal duty. As to that issue, the Colorado Court of Appeals determined that expert testimony was not necessary. Here, the question is not whether Ohio had a legal duty to Wak — it clearly did. The duty was to act as a reasonable insurer would have acted. The question of how a reasonable insurer should have acted — or put differently, of what insurance industry standards were — is a question of fact, not law.

insurance industry standards. Unfortunately, Wak does not point the Court to any standard that Ohio violated. In addition, although the Act may be used to evidence of industry standards, it is not conclusive evidence, and it "does not establish a standard of care actionable in tort". *Allen*, 102 P.3d at 344 (emphasis added).

Finally, Wak complains of many incidents in which it contends that Ohio's conduct was unreasonable. In particular:

- Ohio took no action after its determination in July 2014 until May 2015.
- When processing the insurance claim in July 2014, Ohio did not instruct Wak to submit a proof of loss or call Wak's attention to the availability to appraisal, despite being aware from phone conversations with Wak personnel of the parties' disagreement. Instead of advising Wak to submit a proof of loss, Ohio advised Wak over the phone to have the roofer supply his report to Ohio.
- Ohio took over two weeks to request a proof of loss once Wak demanded appraisal in September 2015. Apparently, Wak argues that the fact of the request is patently unreasonable because the Policy does not provide for a proof of loss as a prerequisite for appraisal.
- Ohio did not pay on the insurance claim until after the appraisal award was entered.

The Court confesses confusion as to the significance these references. None of these pertain to Ohio's conduct in July 2014. To the extent that these contentions are offered to bolster Wak's argument that Ohio acted unreasonably in post-2014 dealings, they do nothing to address the underlying proof problem. They are not evidence of what a reasonable insurer would have done if it had been in Ohio's position.

The Court therefore finds that Wak has failed to come forward with evidence sufficient to establish the first element of its bad-faith claim — that a reasonable insurer would have paid or otherwise settled the insurance claim under these circumstances.

### 2. *Knowing or Reckless Disregard*

The second element that Wak must prove is that Ohio acted knowingly or recklessly in disregarding Wak's insurance claim. This element focuses on Ohio's knowledge, but it is premised upon proof that Ohio disregarded the validity of the claim – which is the essence of the first element of proof. Absent adequate proof of what a reasonable insurer would have done, Wak cannot satisfy its burden on this element, either.

### 3. *Loss*

The final element that Wak must prove is that it suffered a loss due to Ohio's unreasonable conduct. Because bad-faith breach of an insurance contract is a tort. *See Goodson*, 89 P.3d at 414. The loss that is pertinent to the tort must reasonably and proximately result from the tortious conduct. Thus, the loss that Wak must prove is not the same as what Ohio was required to pay under the Policy. Indeed, Wak has received what it was entitled to under the Policy as determined by the umpire's award. Instead, Wak's loss must result from Ohio's unreasonable conduct when quantified Wak's loss at $734.92 in 2014, and arguably conduct that occurred thereafter.

Considering, for the sake of analysis, all the conduct about which Wak complains, and assuming that Wak could establish that such conduct was tortious, the Court turns to Wak's proffer.

First, Wak offers the report of its public adjuster showing that the amount of Wak's insurance claim was $213,868.31. This report was submitted by Wak in conjunction with the

appraisal process. Although this may bear on the valuation of what Wak was entitled to under the Policy, it has no relevance to Wak's alleged delay in claim determination or payment.

Second, Wak points to the fact that Ohio promptly paid the appraisal award. Wak appears to argue that Ohio's payment is an admission that its original determination in 2014 was incorrect. Even if that assumption were correct, it does not bear on what loss Wak suffered because of the delay in payment.

Third, Wak suggests that it was inconvenienced by Ohio's request that it postpone repairs during the first stages appraisal process. It is undisputed that Ohio requested this during the first stages of the appraisal process, but there is no evidence of what inconvenience Wak suffered or any evidence of a monetary loss attributable to such inconvenience.

Finally, Wak argues that it has been deprived of prejudgment interest. This argument is perplexing. There is no dispute that a plaintiff who succeeds on a bad-faith breach claim can seek an award of prejudgment interest. *See Herod v. Colo. Farm Bureau Mut. Ins. Co*., 928 P.2d 834, 838 (Colo. App. 1996). Most commonly this occurs when an insurer wrongfully refuses to pay an insurance claim and judgment is entered against the insurer for the bad-faith breach of the insurance contract. The prejudgment interest is awarded to compensate for the time/value of money that should have been paid earlier. *See U.S. Indus. Inc. v. Touche Rosse & Co*., 854 F.2d 1223, 1256 & n.47 (10th Cir. 1988). But an award of prejudgment interest is a remedy; part and parcel of damages compensating a loss. *See Johnson v. Continental Airlines Corp*., 964 F.2d 1059, 1062–63 (10th Cir. 1992) (collecting cases stating that prejudgment interest is a part of compensatory damages measuring loss). Prejudgment interest is not, itself, a loss.

If Wak means to argue that it has lost the time/value of money that Ohio should have paid in 2014 as compared to 2016, it has not come forward with any evidence that the award in 2016

did not take delay in payment into account, or evidence as to how the time/value of the delayed payment would be measured.

In summary, Wak has failed to come forward with sufficient evidence from which a jury could reasonably find that (1) a reasonable insurer would have paid or settled Wak's insurance claim in 2014 or (2) that it has suffered any loss because of Ohio's 2014 determination of the claim or incidental events that occurred thereafter. Consequently, there is no triable issue with regard to Wak's claim for bad-faith breach of contract, and entry of summary judgment on this claim in favor of Ohio is appropriate.

**B. Claim 2 — Unreasonable Delay and Denial of Payment of Covered Benefits**

Wak also brings an unreasonable-delay claim pursuant to C.R.S. § 10-3-1115. Because Ohio conceded that Wak's casualty loss was covered under the Policy, but disagreed as to the amount of the loss, Claim 2 is properly treated as one for *delay* in the payment of benefits. *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 568 (Colo. App. 2015). Under C.R.S. § 10-3-1115, an insurer who delays payment to an insured without a reasonable basis for its delay breaches its statutory duty of good faith and fair dealing. To prove a claim under the statute, Wak must demonstrate that: (1) Ohio delayed payment of benefits to it, and (2) that delay was without a reasonable basis. *See Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).

Again, Wak has failed to come forward with evidence sufficient for a *prima facie* showing. The only evidence that Ohio delayed the appraisal process is its request to reinspect the property and the resulting scheduling issues, but this evidence is accompanied by nothing to show that requesting a reinspection or having scheduling problems was unreasonable. Prior to the appraisal process (pre-September 2015), any delay was not attributable to Ohio. After Ohio

11

issued its determination on the insurance claim on July 7, 2014, it was incumbent upon Wak to take any number of next steps,[5] such as submitting a report from its roofer, demanding appraisal, or submitting any other information that might merit Ohio's reconsideration of the claim. Instead, Wak submitted nothing for over a year. Any delay here was attributable to Wak.

The real thrust of Wak's argument is that, because the appraisal award was so much higher than the initial claim determination, the initial determination *must* have been unreasonable. But the issue is not whether the 2014 determination was unreasonable, but instead whether Ohio's delay in payment until 2016 was unreasonable. The fact that the 2016 appraisal award was higher — even significantly higher — than the 2014 determination is probative of the amount of the insurance claim, but it does not establish that Ohio's delay in making a subsequent payment until the appraisal process was completed was unreasonable. Indeed, Wak comes forward with no evidence to suggest that it was unreasonable for Ohio to rely upon the appraisal provision of the Policy for quantification of the insurance claim.

---

[5] Signaling oral disagreement on a phone call is not the same as a demand for appraisal. Contrary to Wak's belief, Ohio was not obligated to explain to Wak the Policy's terms, which include the provisions about a proof of loss and appraisal, nor was it obligated to alert Wak to the provisions' existence. If anything, it was Wak's duty to be familiar with the Policy and to pursue its provisions. *See Spaur v. Allstate Ins. Co.*, 942 P.2d 1261, 1265–66 (Colo. App. 1996) (collecting cases). Even so, when Wak apprised Ohio that it intended to retain its own estimate from a roofer, Ohio asked for a copy of the roofer's report in addition to already stating in its claim letter to forward any additional information that "would justify reconsideration". (**# 48-5 at 5**.)

## V. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (**# 48**) is **GRANTED**. Judgment shall issue in favor of the Defendant.

Dated this 21st day of February, 2019.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge